Bennie FIGURES, Jr., Plaintiff,

v.

BOARD OF PUBLIC UTILITIES OF KANSAS CITY, KANSAS; The City of Kansas City, Kansas; C.R. Singleton; Jim Widner; Tom Lynch; Clifford Nesselrode; Clarence DeGraeves, and Joe Dick, Defendants.

Civ. A. No. 88–2108–0.

United States District Court,
D. Kansas.

Feb. 20, 1990.

John H. Fields, Blaise R. Plummer, Carson & Fields, Kansas City, Kan., for Bennie Figures, Jr.

Lee M. Smithyman, Smithyman & Zakoura, Kansas City, Kan., for Clifford Nesselrode.

Henry E. Couchman, Jr., Renee Markl Gurney, Asst. City Attys., Kansas City, Kan., for Board of Public Utilities of Kansas City, Kan., City of Kansas City, Kan., C.R. Singleton, Jim Widner, Tom Lynch, Clifford Nesselrode and Clarence DeGraeves.

Brandon L. Myers, Topeka, Kan., for Kansas Commission on Civil Rights.

Kevin E. Koch, Rodney L. Turner, Turner, Vader, & Koch, Kansas City, Kan., for Tom Lynch.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is before the court on defendants' motions for summary judgment. Plaintiff, Bennie Figures, filed this action under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title 42, United States Code, Section 1981, and Title 42, United States Code, Section 1983, claiming that he was discriminated against on the basis of his race (black) in his employment with the defendant, the Board of Public Utilities of Kansas City, Kansas (BPU), when he was denied a promotion to Superintendent of Electric Operations. Plaintiff also alleges that defendants' discriminatory acts violated a consent decree entered in *United States v. The City of Kansas City, Kansas, et al.*, Case No. 76–20–C2. For the following reasons, the court denies defendants' motions.

When considering a motion for summary judgment, we must examine all evidence in the light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir.1988). If the moving party bears the burden of proof at trial, he must show, through pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). If the moving party does not bear the burden of proof, he must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). This burden is met when the moving party identifies those portions of the record demonstrating an absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552.

If the moving party meets his requirement, the burden shifts to the nonmoving party who "must set forth specific facts showing that these is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The trial judge then determines whether a trial is needed—"whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 252, 106 S.Ct. at 2512.

The pertinent facts for purposes of the instant motions are as follows: Defendant, Board of Public Utilities (BPU), is an administrative agency of the City of Kansas City, Kansas, (City) established pursuant to K.S.A. 13–1220 *et seq.* The BPU board of directors, consisting of six elected members, is vested with exclusive control of the daily operation of the water plant and electric light plant of the City. At all times pertinent to this litigation, defendants De-Graeve, Dick, Lynch and Nesselrode were members of the Board of Directors of the BPU; defendant Widner held the position of Manager of Electric Operations; and defendant Singleton held the position of Director of Electric Distribution.

Plaintiff Figures, a black male, has been employed by defendant BPU since 1969. Figures has held various positions in the electric operations department since that time, including that of foreman. In late January 1986, Figures bid on the position of First Superintendent/Electric Operations, which had been posted on January 14, 1986. The stated qualifications for this position included specific past experience as a journeyman lineman and progression through the foreman classification. Gary Schrader, the white employee eventually selected to fill the position, did not have progression through the foreman classification. Bidding for the job was to close on February 4, 1986. On that date, a second job bid bulletin was posted for the position which changed the title to "Superintendent of Electric Operations," eliminated the foreman experience and added the qualification that the applicant have successfully completed apprentice lineman school "with additional vocational, technical and

management training and experience." Although the job bid bulletin stated that the position would be subject only to "performance based interviewing," additional testing of applicants was conducted, including technical testing, analytical and clerical testing and a test devised by an outside consultant. In April 1986, after the testing and interviewing was completed, Schrader was selected for the position.

On April 29, 1986, Figures filed a complaint with the Equal Employment Opportunity Commission and the Kansas Commission on Civil Rights. Following receipt of a notice of right to sue letter, Figures timely filed the instant action against the City, the BPU, four board members and two supervisory employees, alleging violations of Title VII and section 1981. In addition, plaintiff seeks damages for violation of the consent decree entered in prior litigation between the United States and the BPU.[1] Plaintiff subsequently amended his complaint to include a claim pursuant to 42 U.S.C. § 1983.

*Title VII Claim*

Initially, defendants Singleton, Widner, Lynch, Nesselrode, DeGraeves and Dick assert they are entitled to summary judgment because they were not named as respondents in Figure's KCCR or EEOC complaint. In accordance with 42 U.S.C. § 2000e–5(f)(1), an aggrieved party under Title VII may only bring a civil action "against the respondent named in the charge ..." and the filing of a timely charge of discrimination with EEOC is a jurisdictional prerequisite to the maintaining of such a lawsuit. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). However, the Tenth Circuit has stated that omission of a party's name from the EEOC charge does not necessitate dismissal of a Title VII action, *see Romero v. Union Pacific Railroad*, 615 F.2d 1303, 1311 (10th Cir.1980). Rather, the court should consider the following factors:

(1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) whether, under the circumstances, the interest of a named [sic] are so similar as the unnamed parties that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interest of the unnamed parties; (4) whether the unnamed party has in someway represented to the complainant that its relationship with the complainant is to be through the named party.

---

1. The Consent decree in question was entered on February 28, 1977 in *United States of America v. The City of Kansas City, Kansas et al.*, Case No. 76-20-C2. The parties to the decree included the United States and defendants, the City of Kansas City Kansas, the BPU, the BPU board members and various unions. Although the Consent Decree was later modified in 1987, at the time of the alleged discriminatory acts in the instant case, the original decree governed.

General Provisions, Paragraph I, of the decree stated that the BPU and its officers, agents, employees, members, successors in interest and all persons in active concert or participation with them are permanently enjoined from engaging in any act or practice which has the purpose or effect of discriminating against any individual because of his race or color. The stated purpose of the decree was to "insure that blacks are not placed at a disadvantage by the hiring, promotion and transfer policies of the BPU, and that any disadvantage to blacks which may have resulted from past discrimination is remedied ..."

The decree provided further that the BPU agreed to a long-term goal of achieving throughout its workforce, proportions of black employees in approximately their respective proportions in the Kansas City, Kansas, civilian labor force with an interim goal of hiring qualified blacks for at least 50% of all vacancies filled by hiring in job classification where the long-term goal had not been met. Regarding promotion to supervisory positions, the decree required the creation of a "promotion pool" from all incumbent black non-supervisory employees, which would be used to fill a goal of at least 50% of the total vacancies in supervisory positions.

With respect to testing, paragraph 19 provided:

BPU shall not administer for purposes of hiring, promotion or transfer any general intelligence or aptitude test to black employees or applicants that has not been validated in accordance with EEOC guidelines.

*Id.* at 1312 (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir.1977)). Further, the administrative charge "must be liberally construed in order to accomplish the purposes of the Act, since such complaints are written by laymen not versed either in the technicalities of pleading or the jurisdictional requirements of the Act." *Id.* at 1311.

■ Here, the only respondent named in the EEOC complaint was the BPU. In examining the *Romero* factors, we observe that the roles of all defendants might well have been ascertained by Figures at the time of filing of the EEOC complaint against the BPU. Therefore, this factor weighs in favor of the defendants. However, the second and third factors weigh in favor of the plaintiff in that the interests of the board members (Lynch, Nesselrode, DeGraeves and Dick), as well as the two supervisory employees (Widner and Singleton), are similar to that of the BPU and none of these defendants has shown actual prejudice in not being named in the EEOC charge.[2] Further, at the time the EEOC charge was filed, it was reasonable for plaintiff, untrained in the technicalities of the law, to have assumed that the defendants' relationship with him was through the BPU. *See Scott v. City of Overland Park*, 595 F.Supp. 520, 524–25 (D.Kan. 1984). Accordingly, defendants' motion for summary judgment on plaintiff's Title VII claim is denied.

*Section 1981 Claim*

In moving for summary judgment on Figure's section 1981 claim, defendants have raised three major issues. First, all defendants move for summary judgment on plaintiff's section 1981 claim contending this claim does not survive the recent holding of the United States Supreme Court in *Patterson v. McClean Credit Union*, — U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), which narrowed the applicability of

section 1981 in the employment context. However, a careful analysis of *Patterson* reveals that the Supreme Court has not precluded section 1981 claims based on discrimination in promotion. Specifically, the court stated in *Patterson* that "the question whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer.... Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981." 109 S.Ct. at 2377. Since *Patterson* was decided, at least one court has persuasively suggested that in determining whether a particular promotion creates a "new and distinct relation" between the employer and employee "the focus of the inquiry should be on whether the promotion would change the terms of the contractual relationship...." *See Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1311 (7th Cir.1989).

■ In applying this analysis, we find that plaintiff has raised a genuine issue of material fact as to whether the promotion at issue in this case would have created an opportunity for a new relationship between the parties, particularly since Figures was applying for a management position and the promotion would have been from a bargaining unit, lineman position, to a non-bargaining management position. Accordingly, we reject defendants' argument that the section 1981 claim is barred by *Patterson.*

■ Second, all six named defendants contend summary judgment is warranted on plaintiff's section 1981 claim against them in their personal capacities, on the basis that plaintiff has failed to raise a genuine issue of material fact concerning personal involvement in the alleged dis-

**2.** Although defendants claim they have been prejudiced by not having received notice of the EEOC charge, we note that on May 23, 1986, plaintiff filed a petition in *United States of America v. The City of Kansas City, Kansas et al.*, Case No. 76–20–C2, alleging a violation of the consent decree based on the same facts alleged in the instant case. The court finds that, since all defendants were parties to the consent decree, plaintiff has raised an issue of material fact regarding the question of notice.

crimination. We disagree. While clearly a defendant in a civil rights action must have personal involvement in the alleged wrongs, *see Parratt v. Taylor*, 451 U.S. 527, 537 n. 3, 101 S.Ct. 1908, 1913 n. 3, 68 L.Ed.2d 420 (1981), personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988). Here, plaintiff's claim against the defendant board members is based, at least in part, upon the alleged intentional adoption of or acquiescence in a discriminatory promotion policy which affected the plaintiff. Plaintiff's claim against the two supervisory employees is based upon their alleged direct participation in the selection process for the position at issue. After carefully reviewing defendants' arguments and examining the record, we find that none of the six defendants has sufficiently controverted these allegations of personal participation to warrant summary judgment.

■ Finally, the four board members contend that, as local legislators, they are shielded from liability on the section 1981 claim by legislative immunity. We recognize that the Supreme Court has held that members of federal and state legislatures enjoy absolute immunity from civil damages actions when acting within "the sphere of legitimate legislative activity," *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 731–32, 100 S.Ct. 1967, 1974, 64 L.Ed.2d 641 (1980). Such immunity is premised upon "the need for an independent legislative branch, free from the coercion of restraint imposed by inquiry from other governmental authority, as well as from the time consuming problem of legislators having to defend their official acts in court." *Agromayor v. Colberg*, 738 F.2d 55, 58 (1st Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 515, 83 L.Ed.2d 405 (1984). While legislative immunity does not extend to every act of a legislator, *id.*, at 59, the test for its application has been whether the conduct at issue is "an integral part of the deliberative and communicative process by which [legislators] participate in ... proceedings." *Gravel v. United States*, 408 U.S. 606, 625,

92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972). *See generally Bostick v. Rappleyea*, 629 F.Supp. 1328 (N.D.N.Y.1985).

In *Lake Country Estates Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), the Supreme Court extended absolute immunity from federal and state to regional legislators. Although the Court declined to address whether local legislators should be afforded absolute immunity from federal damages claims, the vast majority of circuits has so held. *See Haskell v. Washington Township.*, 864 F.2d 1266 (6th Cir. 1988), and cases cited therein. Although the Tenth Circuit has not yet had the opportunity to decide this issue, we are of the opinion that the Circuit would join the majority and extend absolute immunity to local legislators performing legislative functions. *See Ditch v. Board of County Commissioners of the County of Shawnee, Kansas*, 650 F.Supp. 1245, 1247–48. (D.Kan.1986).

The question then, which we are called upon to determine, is whether the alleged discriminatory acts committed by the four board members are legislative in nature. The key inquiry is in what capacity the board members were acting at the time of their alleged unconstitutional conduct. *Haskell v. Washington Township, supra* at 1277. "[W]hen local officials act in a judicial or legislative capacity, they are entitled to absolute immunity. If their conduct is administrative in nature, then only qualified immunity is available.... Moreover, absolute immunity does not extend to even traditionally legislative actions of officials taken either in bad faith, because of corruption, or primarily in furtherance of *personal* instead of public interests." *Id.* at 1278, (emphasis in original) (citation omitted).

Here, after careful consideration we find that, given the present state of the record, we are unable to determine whether the alleged acts occurred within the legitimate sphere of legislative activity. Although the acts complained of appear to have resulted from the defendants' voting patterns, we agree with the Third Circuit that

this fact "is not dispositive, for in the exercise of non-legislative powers all corporate bodies require a vote of their governing bodies." *Abraham v. Pekarski,* 728 F.2d 167, 174 (3d Cir.), *cert. denied,* 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984). After hearing the evidence at trial, we will be in a better position to consider another motion. At this time, however, we are unable to find that the board members are absolutely immune from § 1981 personal liability.

IT IS THEREFORE ORDERED that defendants' motions for summary judgment are denied.