**Dorothy M. GULIFORD, Plaintiff,**

v.

**BEECH AIRCRAFT CORPORATION, Defendant.**

No. 90–1013 C.

United States District Court, D. Kansas.

July 23, 1991.

Pantaleon Florez, Jr., Topeka, Kan., for plaintiff.

Larry B. Spikes and Kathryn Gardner, Martin, Pringle, Oliver, Wallace & Swartz, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the defendant's motion to dismiss or for summary judgment (Dk. 31). Plaintiff brings this employment discrimination case alleging that on the basis of her race and in retaliation, she was denied promotions and transfers, was demoted, was transferred and was a victim of harassment. Plaintiff seeks relief under 42 U.S.C. § 1981 and 42 U.S.C. § 2000e *et seq.* (Title VII). Defendant seeks summary judgment on all of plaintiff's claims but the Title VII claim for discriminatory transfer on August 24, 1988.

Defendant styles its motion as one to dismiss or, in the alternative, for summary judgment. Whenever the movant or respondent submit matters outside the pleadings and the court accepts those matters in making its decision, Rule 56 of the Federal Rules of Civil Procedure will govern the motion. *Torres v. First State Bank of Sierra County,* 550 F.2d 1255, 1257 (10th Cir.1977). Plaintiff has been adequately notified that the defendant is also seeking summary judgment by its motion. Having relied upon those matters submitted by the parties that are outside the pleadings, the court will treat the motion as one for summary judgment.

Without weighing the evidence or determining credibility, the court grants summary judgment when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2511–2512.

An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. An issue of fact is "material" if proof of it might affect the outcome of the lawsuit. 477 U.S. at 249, 106 S.Ct. at 2510. Factual inferences are drawn to favor the existence of triable issues, and where reasonable minds could ultimately reach different conclusions, summary judgment is inappropriate. *See Riley v. Brown & Root, Inc.*, 896 F.2d 474, 476–77 (10th Cir.1990).

More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Though a court should be cautious to grant summary judgment in a discrimination case when intent is at issue, such motions are useful to weed out those claims and cases obviously lacking merit. *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700, 709 (10th Cir.1988); *Schwenke v. Skaggs Alpha Beta, Inc.*, 858 F.2d 627, 628 (10th Cir.1988). Plaintiff must come forth with specific facts to show a genuine issue of material fact; mere assertions or conjecture as to intent or pretext is not enough to survive summary judgment. *Branson v. Price River Coal Co.*, 853 F.2d 768, 771–72 (10th Cir.1988).

With few exceptions, the parties have not controverted each other's statement of facts. Rather than repeat them here, the court simply adopts the uncontroverted facts as stated. A brief summary of the relevant facts is an adequate background for the legal rulings which follow.

After her lay off from Salina, plaintiff was recalled to Beech's facility in Wichita, approximately five months later, on May 6, 1985, as a metal bond worker in Department 326. She transferred from this department to Department 378 on June 6, 1988, on her own request. Beech transferred her back to Department 326 effective August 29, 1988.

On April 1, 1989, plaintiff filed a race discrimination charge with the Kansas Commission on Civil Rights ("KCCR"). The sole allegation in that charge is:

I was hired by the employer on 11–29–76. My Badge Number is 70792. On 8–24–88 I was told I was disqualified as an Inspector in Department 378, (Quality Assurance). I believe that I was disqualified due to my race, Black.

This is the only discrimination charge filed by plaintiff against Beech.

During discovery, plaintiff has identified the following claims:

a) failure to promote her from Department 326 metal bond worker to Department 326 crew chief on the following dates: October 1, 1987; October 9, 1987; December of 1989; February 19, 1989; and June 8, 1989.

b) failure to transfer from Department 326 metal bond worker to inspector on the following dates: March 23, 1989 (Andover plant); and Fall of 1989 (Plant II).

c) demotions from inspector to Department 326 metal bond worker on the following dates: August 29, 1988 (from Department 378); February 27, 1989 (from Department 378); and August 14, 1989 (from Department 78–5).

d) harassment on a number of specified and unspecified dates from August through December 1988, August 1989, and April through May of 1990.

e) retaliation concerning most of the discriminatory conduct referenced in the above categories.

## FOURTEENTH AMENDMENT

As reflected in the pretrial order, the plaintiff is not bringing any claim for relief under the Fourteenth Amendment.

## TITLE VII

Defendant contends plaintiff has failed to exhaust her administrative remedies on the Title VII claims with the exception of her disqualification from inspector in August 1988 which is the only act of discrimination specifically mentioned in her administrative charge. Plaintiff briefly responds that her other race discrimination claims are "like" the allegations in the charge and that the adverse actions occurring after the charge was filed were retaliation for the charge.

Before a Title VII suit is filed in federal court, the aggrieved individual must exhaust administrative remedies. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). The administrative remedies are exhausted when the claimant files a timely charge of discrimination with the appropriate administrative agency and then receives and acts upon the statutory notice of the right to sue. *Id.* The enforcement of these exhaustion requirements ensures the EEOC the opportunity to conduct its investigatory and conciliatory procedures before any suit is filed on the charges. *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir.1983).

The exhaustion requirements are enforced in part by the general rule that the judicial complaint can include only claims which were the precise subject of the administrative charge and any claims of " 'discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC.' " *Brown v. Hartshorne Public School Dist. No. 1*, 864 F.2d 680, 682 (10th Cir.1988) (quoting *Oubichon v. North American Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir.1973)). The proper scope of the judicial complaint is determined from both the EEOC charge and the EEOC investigation. *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir.1990). The EEOC charge is construed liberally. *Sosa*, 920 F.2d at 1456; *Lange v. Cigna Individual Financial Services Co.*, 759 F.Supp. 764, 767 (D.Kan.1991); see also *Powers v. Grinnell Corp.*, 915 F.2d 34, 38–39 (1st Cir. 1990) (EEOC charge is not a "blueprint for the litigation" or a "common-law pleading," nor need it presage exactly the judicial pleadings; instead, it is "a jurisdictional springboard" for the EEOC's investigation of discriminatory practices); *Rush v. Mc-Donald's Corp.*, 760 F.Supp. 1349, 1355 (S.D.Ind.1991) (Charge of discrimination is construed "with the utmost liberality"). The court must also consider whether the EEOC's investigation actually included, or should have included, the additional claims not expressly stated in the administrative charge. "[T]he critical question is whether the claims set forth in the civil complaint come within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.' " *Powers*, 915 F.2d at 39 (citations omitted); see also *Sosa*, 920 F.2d at 1456; *Whitten v. Farmland Industries, Inc.*, No. 88–2637–0 (D.Kan. Apr. 25, 1991) (1991 WL 75695, 1991 US Dist. Lexis 6075); *Rucker v. Frito–Lay, Inc.*, No. 89–4172–S (D.Kan. Nov. 21, 1990) (1990 WL 203167, 1990 US Dist. Lexis 16566). In applying these rules, the court must remain mindful that the EEOC's investigative and conciliatory role should not be frustrated nor the employer deprived of all reasonable notice. *Babrocky v. Jewel Food Co. and Retail Meatcutters*, 773 F.2d 857, 863 (7th Cir. 1985).

The EEOC's written determination on plaintiff's charge is the only evidence of record concerning the actual scope of the EEOC's investigation. The EEOC's determination shows the investigation was confined to plaintiff's disqualification from inspector because of her inability to read blueprints accurately and complete forms properly. The EEOC also considered whether defendant gave plaintiff the time to obtain those skills and for additional attempts at qualifying. Because of the scant allegations in plaintiff's administra-

tive charge, this court has no reason to find that it could be reasonably expected that the EEOC's investigation would be broader than it actually was. The EEOC's determination indicates the investigation included plaintiff's other attempts at qualification which apparently occurred on February 27, 1989 and August 14, 1989. The court concludes that plaintiff's demotion or disqualification claims of February 27, 1989 and August 14, 1989, are reasonably related to the claim of August 29, 1988, by reason of their common facts and the reasonable expectation that these other attempts at qualification would be within the scope of the EEOC investigation.

█ The Tenth Circuit in *Brown* followed the general rule "that acts committed pursuant to a pattern of discrimination challenged in an EEOC complaint, but occurring after its filing, are reasonably related to that complaint, and may be challenged in district court without filing another EEOC complaint." 864 F.2d at 682 (citations omitted). Plaintiff here has not presented evidence of a pattern or practice for purposes of this issue. Plaintiff has not provided any evidence showing a factual connection between her demotion claims and her other claims for failure to promote, failure to transfer, and harassment. See *Allen v. Denver Public School Bd.*, 928 F.2d 978, 984 (10th Cir.1991). The mere fact that plaintiff alleges race discrimination in each instance is not enough to establish an ongoing pattern of discrimination.

The Tenth Circuit in *Brown* also recognized and followed another general rule "that an act committed by an employer in retaliation for the filing of an EEOC complaint is reasonably related to that complaint, obviating the need for a second EEOC complaint." 864 F.2d at 682 (citations omitted). The plaintiff in *Brown* was allowed to bring a claim of retaliation for

defendant's failure to hire her for the 1985–86 school year which occurred while her EEOC complaint was pending. *Id.* Applying this rule to the instant case, plaintiff may assert those Title VII claims based on retaliatory acts committed by defendant in response to her EEOC complaint of April 1, 1989, and before the EEOC issued its determination on September 27, 1989. See *Neyman v. United Telecommunications, Inc.*, No. 90–2033–0 (D.Kan. Feb. 25, 1991) (1991 WL 33609, 1991 US Dist. Lexis 2747). All other claims of retaliation are outside the scope of plaintiff's original EEOC charges.

### 42 U.S.C. § 1981

Plaintiff concedes her claims under § 1981 are subject to a two-year statute of limitations. Plaintiff represents that those events outside of the limitations period will be used only as evidence for other claims.

The Supreme Court in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), held that § 1981 prohibits racial discrimination in the making and enforcing of contracts. The Court found the plain language of § 1981 to "not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations." 491 U.S. at 171, 109 S.Ct. at 2369. Consequently, claims based on terms and conditions of employment were not available under § 1981. 491 U.S. at 177, 109 S.Ct. at 2373. The Tenth Circuit has joined the other circuit courts and applied retroactively the *Patterson* holding. *Hill v. Goodyear Tire & Rubber, Inc.*, 918 F.2d 877, 879–80 (10th Cir.1990).

Plaintiff concedes her claims for harassment and discriminatory terms and conditions are not viable under § 1981. She argues her claims for demotions, promotions, and retaliation[1] are viable be-

---

1. The Tenth Circuit in *Hill v. Goodyear Tire & Rubber, Inc.*, 918 F.2d 877, 880 (10th Cir.1990) reserved its opinion on whether an employee could bring a § 1981 claim for retaliation based upon "advocating changes in conduct actionable under section 1981, *e.g.*, discriminatory hiring practices." If plaintiff's move to inspector would have constituted a new and distinct rela- tion with defendant, then plaintiff could possibly bring a § 1981 claim for any retaliatory actions taken in response to her EEOC charge. Plaintiff has wholly failed to come forth with evidence to show a new and distinct relationship would have been created by her move to an inspector. For this reason, plaintiff's retaliation claim is not viable under § 1981.

cause they involve the making of "new" contracts with defendant.

■ "[W]hether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." *Patterson*, 491 U.S. at 185, 109 S.Ct. at 2377. An actionable promotion "rises to the level of an opportunity for a new and distinct relation between the employee and the employer...." *Id.* An example of such a promotion cited by the Court, *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), is the move from associate to partner in a law firm. *Id.*

Without any guidance from the Tenth Circuit, Chief Judge O'Connor has looked to the Seventh Circuit in focusing the inquiry of what is a "new and distinct relation" to " 'whether the promotion would change the terms of the contractual relationship.' " *Payne v. General Motors Corp.*, 731 F.Supp. 1465, 1473–74 (D.Kan. 1990) (quoting *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1311 (7th Cir.1989);[2] see also *Figures v. Bd. of Public Utilities of Kansas City*, 731 F.Supp. 1479, 1482 (D.Kan.1990) (Summary judgment for defendant denied since plaintiff's promotion would have been a move to a non-bargaining unit management position); *Sims v. Bd. of Public Utilities of Kansas City*, No. 89–2328–0 (D.Kan. Mar. 28, 1991) (1991 WL 49792, 1991 US Dist. Lexis 4583) (Potential change in salary and responsibilities would not substantially change the relationship with employer). Judge Van Bebber of this district has also focused on the change in the terms of the contractual relationship. *Lee v. Farmers Ins. Co., Inc.*, No. 90–2181–V, 1991 WL 80134 (D.Kan. Apr. 15, 1991).

Of those federal courts that have struggled with the "new and distinct relation" test, most have used a functional approach which evaluates the change in such factors as manner and level of pay, required qualifications, responsibilities, functions and status. *Stradford v. Rockwell Intern. Corp.*, 755 F.Supp. 760, 764 (S.D. Ohio 1991); *Adames v. Mitsubishi Bank, Ltd.*, 751 F.Supp. 1548, 1556 (E.D.N.Y.1990) (and cases cited in each). These factors are balanced considering the number of factors affected by the promotion, the magnitude of change in the individual factors, and the overall effect of the changes. *Hudgens v. Harper–Grace Hospitals*, 728 F.Supp. 1321, 1325 (E.D.Mich.1990).

Even if the relevant factors and general approach for balancing them are known, the question remains what degree of change is necessary before the court can say a new contract or a new and distinct relation would have been formed. Some courts have said the change in the employment relationship must be a "fundamental" one as distinguished from garden-variety or routine advancements or raises. *Long v. AT & T Information Systems, Inc.*, 733 F.Supp. 188, 196 (S.D.N.Y.1990); *Byrd v. Pyle*, 728 F.Supp. 1, 2 (D.D.C.1989), vacated on other grounds, 902 F.2d 962 (D.C.Cir.1990) ("[I]ncreased pay and responsibility, standing alone, do establish the *Patterson* threshold...."); *Holt v. Michigan Dept. of Corrections*, —— F.Supp. ——, No. 90–CV–904 (W.D.Mich. May 31, 1991) ("This court believes these factors provide an excellent basis for determining whether a fundamental and distinct change in the contractual relationship between the employer and the employee would have occurred...."); see, e.g., *Williams v. Chase Manhattan Bank, N.A.*, 728 F.Supp. 1004, 1009 (S.D.N.Y.1990) (Promotion from assistant bank manager, a bank employee position, to assistant treasurer, a bank offi-

---

**2.** Judge Posner in *Malhotra* suggested two possible interpretations of *Patterson*. Relying on the Court's terminology of a "new contract" and citation of *Hishon*, Judge Posner observed that "the focus of inquiry should be on whether the promotion would change the terms of the contractual relationship between the employee and employer." 885 F.2d at 1311. The other inter-

pretation is broader as it looks to whether an outsider could apply for the position and then sue under § 1981 if the position was denied him or her. The latter test emphasizes the distinction between a routine in-house promotion or salary raise and the promotion in *Hishon*. Chief Judge O'Connor has chosen the former interpretation, as have most courts.

cer position was actionable under § 1981, but the promotion from assistant bank manager to branch manager was not); *Crader v. Concordia College,* 724 F.Supp. 558, 561–63 (N.D.Ill.1989) (A move from assistant director to director of housekeeping, though possibly representing a substantial increase in responsibility and authority, did not fundamentally change the "quality" of the employment relationship).

Rather than defining or labelling the degree of change which meets the *Patterson* test, other courts have used a fact-specific analysis that focuses on the degree of differences. The results reached by these courts can be summarized under some general rules. Promotions from a nonsupervisory to a supervisory promotion is actionable. See, e.g., *Mallory v. Booth Refrigeration Supply Co., Inc.,* 882 F.2d 908, 910 (4th Cir.1989) (Billing clerk to department supervisor); *Toliver v. Sullivan Diagnostic Treatment Center,* 748 F.Supp. 223 (S.D.N.Y.1990) (counselor to program supervisor); *Luna v. City and County of Denver,* 718 F.Supp. 854, 856–57 (D.Colo. 1989) (project inspector to engineer). A change in pay or title with other significant changes satisfies *Patterson,* See e.g. *Hudgens,* 728 F.Supp. at 1325–26 (actionable promotion from supervisor to analyst as involved different pay, qualifications, and responsibilities); *Miller v. Shawmut Bank of Boston,* 726 F.Supp. 337, 341 (D.Mass. 1989) (customer services representative to personal banker). Routine promotions entailing increased pay or nominal title changes without any accompanying increase in responsibility or authority fail the *Patterson* yardstick. *Adames v. Mitsubishi Bank, Ltd.,* 751 F.Supp. at 1556.

While both approaches are concerned with the changes reflected through the factors, the courts using the latter approach sometimes have been content with the fact that changes have occurred, but the former approach requires the courts to expect something more. This court joins those believing that the Supreme Court intended to require something more in the form of a fundamental change in the employment relationship.

The promotion exception recognized in *Patterson* is a limited one. *Stradford v. Rockwell Intern. Corp.,* 755 F.Supp. at 765; *Holt,* No. 90–CV–904 at 4–6. The Supreme Court applied the rule of construction that a court "should be reluctant to read an earlier statute broadly where the result is to circumvent the detailed remedial scheme constructed in a later statute." 491 U.S. at 181, 109 S.Ct. at 2375 (citation omitted). The Court went on to explain that the overlap between § 1981 and Title VII on refusal to hire claims made sense, because "[a]t this stage of the employee-employer relation Title VII's mediation and conciliation procedures would be of minimal effect, for there is not yet a relation to salvage." 491 U.S. at 182, 109 S.Ct. at 2375. The Court also said the court of appeals had "overstate[d] the case" in saying " '[c]laims of racially discriminatory ... promotion go to the very existence and nature of the employment contract and thus fall easily within § 1981's protection.' " 491 U.S. at 185, 109 S.Ct. at 2377. In short, not all promotions are protected by § 1981, and there is no need to construe § 1981 broadly as Title VII offers a remedial scheme for all claims of racial discrimination in promotions.

An actionable promotion is not one that can be implied from the parties' original contract. The promotion must involve "the opportunity to enter into a new contract with the employer." *Id.* In other words, the basic terms of the contractual relationship between the employer and employee must be so affected as to necessitate or create a new contract.

Finally, an actionable promotion must leave the parties in a "new and distinct relation." 491 U.S. at 185, 109 S.Ct. at 2377. The Supreme Court cautioned lower courts to read fairly and naturally and to not strain the phrase in § 1981, "the same right ... to make ... contracts." The court then used the "new and distinct relation" language and cited as an example the *Hishon* case. The example is instructive. In moving from an associate to a partner in a law firm, an individual acquires an ownership interest in the law firm, assumes a

direct role in and personal liability for the firm's affairs, begins supervising and taking responsibility for the associates, and realizes an increase in compensation and benefits and a change in the manner of how they are paid and computed. See *Harrison v. Associates Corp. of North America*, 917 F.2d 195, 198 (5th Cir.1990). The cite to *Hishon* evidences the Court's intent to read § 1981 as being available for only those promotions involving a fundamental change. *Byrd*, 728 F.Supp. at 2.

■ The parties do not discuss whether the issue of a new and distinct relation is one of fact for the jury or one of law for the court. The Supreme Court in *Patterson* did not address this procedural matter. Some courts have denied summary judgment motions for the reason that a genuine issue of fact remained on whether the promotion would have created a new and distinct relation. See *Dash v. Equitable Life Assur. Soc. of U.S.*, 753 F.Supp. 1062, 1068–69 (E.D.N.Y.1990); *Figures*, 731 F.Supp. at 1482. This court need not add its opinion on this issue, since it can find as a matter of law that the promotion to crew chief would not create a new and distinct relation.

The position of crew chief is considered a promotion from crew metal bond worker as it involves an increase in salary and supervisory responsibilities. Crew chiefs counsel with their foreman on the assignments and performance of workers. Crew chiefs may counsel employees on their performances and may recommend disciplinary measures, but they have no authority to hire or fire. The promotion to crew chief does not change the method of compensation, the fringe benefits, or the membership in the bargaining unit. A crew chief is still paid an hourly wage and is subject to the same job and working conditions. A crew chief may assume some limited supervisory responsibilities, but this position is not considered by defendant to be part of management. In contrast, the move from crew chief to foreman would entail a change from hourly wage to a salary, a change from no authority for hiring and firing to having that authority, a change from a bargaining unit employee to non-bargaining unit employee, and a change from non-management to management. On these facts, the court has no difficulty finding that a promotion to crew chief would not create a new contract between plaintiff and defendant or fundamentally change the relation between them so as to be called new and distinct. Defendant is granted summary judgment on plaintiff's § 1981 promotion claims.

■ Plaintiff's demotion claims do not involve either the making of a contract or its enforcement. "[C]onduct amounting to a breach of contract under state law is precisely what the language of § 1981 does not cover." *Patterson*, 491 U.S. at 183, 109 S.Ct. at 2376. Finally, plaintiff's § 1981 retaliation also failed as plaintiff's alleged protected activity was not actionable under § 1981. *Hill*, 918 F.2d at 880 n. 3.

### PENDENT CLAIMS

■ Under this section, defendant advances three arguments. First, plaintiff cannot bring a state law claim for retaliatory discharge based on race discrimination or retaliation as the Kansas Acts Against Discrimination, K.S.A. 44–1001 *et seq.* (KAAD) provides an adequate and exclusive state remedy for violations of the public policies expressed therein, including the prohibition of race discrimination and retaliation, citing *Polson v. Davis*, 895 F.2d 705, 709–10 (10th Cir.1990). Second, plaintiff has failed to exhaust her administrative remedies concerning her KAAD claims, citing, *inter alia*, *Van Scoyk v. St. May's Assumption Parochial School*, 224 Kan. 304, 580 P.2d 1315 (1978). See also *Laughinghouse v. Risser*, 754 F.Supp. 836, 842 (D.Kan.1990); *Freeman v. Kansas State Network, Inc.*, 719 F.Supp. 995, 997–98 (D.Kan.1989); *MacDonald v. Fleming Foods–Cash & Carry Div.*, No. 87–1367–T (D.Kan. Nov. 11, 1988) (1988 WL 131353, 1988 US Dist. Lexis 13640). Third, the court should decline to exercise pendent jurisdiction on the grounds of judicial economy, convenience and fairness, citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 86

S.Ct. 1130, 16 L.Ed.2d 218 (1966). Plaintiff's single sentence response to these three arguments is: "Defendant has failed to cite any authority for its proposition that the Kansas Act Against Discrimination is the exclusive means through which an aggrieved citizen may seek redress." The court does not understand how this ambiguous assertion directly or indirectly contradicts any of the defendant's arguments. Being uncontested in fact and law and having facial merit, defendant's arguments are sustained.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment (Dk. 31) is granted in part and denied in part;

IT IS FURTHER ORDERED that the only claims remaining for trial are plaintiff's Title VII claims regarding the discriminatory demotions or disqualifications on August 29, 1988, February 27, 1989, and August 14, 1989, and claims of retaliatory actions occurring between April 1, 1989, and September 27, 1989.