**Bryant K. WHITE, Plaintiff,**

v.

**UNION PACIFIC RAILROAD, Defendant.**

**No. 91–1371–K.**

United States District Court, D. Kansas.

Sept. 15, 1992.

Bryant K. White, pro se.

David J. Waxse and Barbara A. Harmon, of Shook, Hardy & Bacon, Overland Park, Kan., for defendant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, Chief Judge.

Mr. White, an African–American and former employee of Union Pacific Railroad, brought an employment discrimination suit against his former employer claiming violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and breach of an expressed or implied employment contract.

Defendant moved for dismissal or in the alternative for summary judgment claiming that the Title VII suit was not timely filed, that the § 1981 suit was barred by the Supreme Court decision of *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), and that the breach of contract claim should fail for lack of supplemental jurisdiction.

Mr. White, as a pro se litigant, responded to the motion for dismissal or summary judgment, although due to car trouble plaintiff was unable to attend the hearing on these motions.

Mr. White was employed by defendant Union Pacific as a part-time trackman, working first in Garnett, Kansas, and later in Enid, Oklahoma. Union Pacific's general code of operating rules included a rule stating that employees "must not absent themselves from duty." On February 23, 1990, Union Pacific terminated Mr. White's employment citing two unexcused absences as the reason. Mr. White contended that there was only one absence, and that it was excused. Furthermore, Mr. White alleged that the reason for termination was racial discrimination, claiming that white employees had missed more than two days and had not been fired.

Shortly before he was fired, Mr. White submitted a bid for a full-time trackman position. Mr. White claimed that he and another African–American employee were two of the six men awarded the positions. Mr. White further alleged that prior to the announcement of these jobs, several employees of Union Pacific, including the foreman, conspired to have the two men fired so that white workers would get the positions. Union Pacific denied both the fact that Mr. White was ever awarded the position and the allegations of discriminatory motive behind the firings.

Mr. White filed a complaint with the Equal Employment Opportunity Commission (EEOC). On May 21, 1991, the EEOC sent Mr. White a notice of the right to sue wherein it stated that Mr. White had 90 days after receipt of the notice to file his claims against Union Pacific. On August

22, 1991, Mr. White filed his complaint against Union Pacific. Also on that date, Mr. White filed an application to proceed in forma pauperis and an application for appointment of counsel. The court granted leave to proceed in forma pauperis on September 6, 1991.

Union Pacific moved for summary judgment due to Mr. White's failure to file his claim within 90 days after receipt of the right to sue notice. Title VII requires a potential plaintiff to file a civil action within 90 days of receiving a right to sue notice from the EEOC. 42 U.S.C. § 2000e–5(f)(1). The Supreme Court has held that failure to file within 90 days of receipt of the EEOC's right to sue notice will bar the suit unless circumstances toll the statute. *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984).

Mr. White claimed that he filed his complaint, his application for appointment of counsel, and his application to proceed in forma pauperis all on August 22, 1991. The Clerk's Office stamped each item as having been received on August 22, 1991. Union Pacific stated in its brief, however, that the court's docket sheet shows these documents as having been filed on September 6, 1991. Union Pacific wanted to differentiate between the mere receipt of documents by the Clerk's Office and the actual filing of those documents.

Furthermore, Union Pacific claimed that even though the form complaint may have been received on August 22, 1991, it was not actually filed until the court granted plaintiff leave to proceed in forma pauperis on September 6, 1991. For its support, Union Pacific quoted the instruction sheet which accompanies civil rights form complaints. The instruction sheet states that "the filing of this complaint, along with the payment of the filing fee or an order of the court allowing you to proceed without prepayment of a fee, commences a cause of action in this court." Thus, the defendant argued that without payment of the filing fee or the court order, the complaint was not officially filed. Union Pacific claimed that only with the court order of September

ber 6, 1991, was Mr. White's complaint actually filed.

■ Following the strict wording of the instruction sheet, it may appear that Mr. White's claim is barred. The court did not grant leave to proceed in forma pauperis until September 6, 1991, 107 days after the notice of the right to sue. The 90–day statute of limitations could therefore bar this claim. Other districts, however, have addressed the 90–day limitations period and found that the mere filing of the complaint along with the application to proceed in forma pauperis is enough. In a similar Title VII case, the plaintiff filed the complaint and the application to proceed in forma pauperis, but the court did not grant leave to proceed in forma pauperis until after the 90–day period. The court found the "operative date for limitations purposes is the date the clerk of court initially receives the complaint." *Stephenson v. CNA Financial Corp.,* 777 F.Supp. 596, 599 (N.D.Ill.1991) ("plaintiff's complaint and IFP petition were timely filed ... when received by the clerk."); *McClelland v. Herlitz, Inc.,* 704 F.Supp. 749, 751 (N.D.Tex.1989). The courts reasoned that because the employer is notified of the charges when the employee files with the EEOC, the purpose of a limitations period is not compromised in Title VII situations.

Although neither of these cases mentioned an explicit instruction sheet that requires a court order to proceed in forma pauperis before the complaint is actually filed, this court finds such an equitable approach more grounded in law than blind adherence to an instruction sheet that has little or no legal force.

■ The EEOC letter was sent on May 21, 1991. There is no mention in defendant's motion or in Mr. White's response as to when Mr. White received this letter. Following the equitable approach of other courts, this court finds that on August 22, 1991, 93 days after the EEOC sent the letter, Mr. White's complaint was validly filed. Fed.R.Civ.P. 6(e) states that whenever a party is required to do some act after the service of a notice, "if the notice or paper is served upon the party by mail, 3

days shall be added to the prescribed period." Given this rule, Mr. White's complaint having been filed on August 22, 1991, falls within the 90–day period. Therefore, following the reasoning of other courts in civil rights cases where the plaintiff is pro se, this court finds that Mr. White's claim is not barred by the 90–day limitations period. Therefore, defendant's motion for summary judgment with regard to the Title VII action is denied.

■ This court next takes up plaintiff's failure to promote the claim brought under § 1981. In response to plaintiff's claim, Union Pacific moved for summary judgment arguing that Mr. White's failure to promote the claim was barred by *Patterson v. McLean Credit Union*. The Supreme Court has held that § 1981 prohibits racial discrimination in the making and enforcing of contracts. *Patterson*, 491 U.S. 164, 109 S.Ct. 2363. A promotion claim is therefore actionable if the change in position "involved the opportunity to enter into a new contract with the employer." *Patterson*, 491 U.S. at 185, 109 S.Ct. at 2377. An employer's refusal to enter into a new contract may be the basis for a § 1981 claim. However, the Court has also defined "new contract" to mean a "new and distinct relation between the employee and the employer." *Patterson*, 491 U.S. at 185, 109 S.Ct. at 2377.

To demonstrate its reasoning, the *Patterson* Court referred to *Hishon v. King & Spaulding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), a case involving an associate denied partnership in a law firm, to represent the type of new and distinct relation it had in mind. Looking at the Court's use of *Hishon*, the Seventh Circuit held that a court's focus "should be on whether the promotion would change the terms of the contractual relationship between the employee and employer." *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1311 (7th Cir.1989).

Our district has used the Seventh Circuit's approach and further elaborated on what constitutes a new and distinct relation. Elaborating on the Supreme Court's use of the *Hishon* case, the court in *Guli-*

*ford v. Beech Aircraft Corp.*, 768 F.Supp. 313 (D.Kan.1991), noted that the change from associate to partner in a law firm entails an individual acquiring an ownership interest in the firm, assuming a direct role in the firm's affairs, taking responsibility for associates, and realizing an increase in compensation and benefits. *Guliford*, 768 F.Supp. at 319–20. This example, the *Guliford* court noted, was instructive as to the sort of fundamental change that the Supreme Court required for failure to promote claims.

The court in *Payne v. General Motors Corp.*, 731 F.Supp. 1465 (D.Kan.1990), followed the Seventh Circuit's reasoning and denied GM's summary judgment motion with regard to plaintiff's failure to promote a claim because the promotion from fifth-level to sixth-level supervisor would have involved new duties and higher wages. Consistent with *Payne*, the court in *Waller v. Consolidated Freightways Corp. of Delaware*, 767 F.Supp. 1548 (D.Kan.1991), echoed the *Guliford* decision when it stated that the test really requires "something more in the form of a fundamental change in the employment relationship." *Waller*, 767 F.Supp. at 1557. The court granted summary judgment for defendant because the promotion at issue—from dock foreman to account manager—did not change the terms or conditions of employment. A salary increase without some "concomitant change in responsibilities or duties is not enough." *Waller*, 767 F.Supp. at 1558.

■ In the case before this court, the change in employment was from a part-time trackman to a full-time trackman. Union Pacific submitted an affidavit from the manager of maintenance services, Mr. Warnke, describing how the new position differs from the part-time position. In his affidavit, Mr. Warnke stated that the new position involved the same hours, the same benefits, the same hourly rate of pay, the same job responsibilities and duties, and required the same qualifications as the part-time trackman position. Furthermore, the affidavit stated that Mr. White would not have received a change in title; he would have remained a "trackman".

Mr. White made no factual assertions and submitted no evidence of how this new position would have differed from his previous position. Without such facts, there is not a triable factual issue before the court concerning the position. Given that the new position, according to Mr. Warnke, does not involve a new and distinct relation between employer and employee or a fundamental change in employment, Mr. White fails to fulfill the *Patterson* requirements for failure to promote claims brought under § 1981.

 In response, plaintiff has raised the issue of whether the 1991 Civil Rights Act applies retroactively and thereby overrules *Patterson*. Under the 1991 Civil Rights Act, the protection from racial discrimination extends not only to the making of contracts, but also to the "performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). The 1991 Act would, therefore, apply to a "refusal to make an ordinary promotion." *Luddington v. Indiana Bell Tel. Co.*, 966 F.2d 225, 229 (7th Cir.1992). If the 1991 Act is given retroactive effect, Mr. White's claim of discriminatory promotion practices would withstand summary judgment, as he has made out a prima facie case of discrimination: that he applied for the promotion, was qualified, was rejected, and that the position was filled by white workers. *Patterson*, 491 U.S. at 186, 109 S.Ct. at 2377–78 (Title VII burden of proof test applies to actions under § 1981).

Although the Tenth Circuit has not addressed the retroactivity of the Civil Rights Act of 1991, four circuits have determined that § 101(2)(b) of the Act, which modifies 42 U.S.C. § 1981, does not apply retroactively. In *Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363 (5th Cir.1992), the Fifth Circuit held that because substantive rights are addressed to the future and are to be given prospective effect, § 101 does not apply retroactively. Similarly, the Eighth Circuit held that although there was "ambiguity as to whether Congress intended the Act to be generally retroactive," § 101 does not apply retroactively. *Fray v. Omaha World Herald Co.*, 960 F.2d 1370, 1377–78 (8th Cir.1992). Judge Posner of the Seventh Circuit also stated that § 101 does not have retroactive force. *Luddington v. Indiana Bell Tel. Co.*, 966 F.2d 225, 229 (7th Cir.1992) ("Retroactive application across the board would produce massive dislocations in ongoing litigation and defeat substantial reliance interests of employers.... We hold that the new act is applicable only to conduct engaged in after the effective dates in the act, ..."). And finally, the court in *Vogel v. City of Cincinnati*, 959 F.2d 594, 597 (6th Cir.1992), held that the 1991 Act does not govern "conduct that occurred before the 1991 Act became law." The Tenth Circuit has merely said that statutes generally should not be applied retroactively unless there is "clear congressional intent" to the contrary. *De-Vargas v. Mason & Hanger–Silas Mason Co., Inc.*, 911 F.2d 1377, 1384 (10th Cir. 1990).

In these decisions, all four circuits discussed the Supreme Court lines of cases that have made the 1991 Act decisions difficult. In *Bradley v. School Bd. of the City of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), the Court set forth a rule of retroactivity which stated that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." Conversely, in *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988), the Court seemingly contradicted its earlier rule by stating that "congressional enactments ... will not be construed to have retroactive effect unless their language requires this result." Thus, courts are left with two distinct statements as to when to apply a statute retroactively. Additionally, the 1991 Act does not expressly state the legislative intent concerning its application.

Courts in our district have uniformly followed the *Bowen* reasoning and found that the Civil Rights Act of 1991 does not have retroactive force. In deciding whether the Act applied retroactively to a Title VII

claim, the court in *Steinle v. Boeing Co.*, 785 F.Supp. 1434 (D.Kan.1992), held that it would follow the *Bowen* opinion and not find retroactive effect. Similarly, Judge Van Bebber held that because no clear legislative intent can be found to apply the Act retroactively, the "court must presume that the statute was not intended to be applied retroactively." *Simons v. Southwest Petro–Chem., Inc.*, No. 90–2243–V, 1992 WL 25218 (D.Kan., Jan. 22, 1992). Consistent with *DeVargas* and *Bowen,* one other memorandum and order issued by our district has also held that the 1991 Act does not have retroactive force. *Johnson v. Mast Advertising & Publishing, Inc.*, No. 90–2451–L, 1992 WL 41352 (D.Kan. Feb. 10, 1992).

■ Given the lack of congressional intent evident in the statute, as well as the circuits' and this district's opinions, this court intends to follow the majority view that the 1991 Act should not be given retroactive application. Thus, Mr. White's claim of discrimination in promotion is governed by *Patterson.* Given the holding in *Patterson*, Mr. White's claim cannot be brought under §. 1981. Defendant's motion for summary judgment with respect to plaintiff's § 1981 failure to promote claim is therefore granted.

■ This court next considers plaintiff's discriminatory termination claim brought under § 1981. In *Patterson,* the Supreme Court, looking at the plain language of § 1981, held that the statute did "not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations." *Patterson,* 491 U.S. at 171, 109 S.Ct. at 2369. "[T]he right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions." *Patterson,* 491 U.S. at 177, 109 S.Ct. at 2373. The Tenth Circuit has further held that a claim of discriminatory discharge cannot be brought under § 1981. *Trujillo v. Grand Junction Regional Center,* 928 F.2d 973,

975 (10th Cir.1991) ("The Court's language and reasoning [in *Patterson* ] show that § 1981 is not available in such cases.").

This court is assuming that Mr. White intends his discharge to be brought under § 1981. For the previously stated reasons, defendant's motion for summary judgment will be granted. Mr. White, however, never specified under what legal theory he brought this claim. He might have a claim under Title VII, but he did not address this and the issue is not before this court.

■ This court must again address whether the 1991 Civil Rights Act applies retroactively to discriminatory termination claims. The express wording of the 1991 Act overrules the *Patterson* limitation that § 1981 suits apply only to the formation of employment contracts. Discriminatory employment practices during the course of employment are also actionable under § 1981. If the 1991 Act were to have retroactive effect, Mr. White's claim of discriminatory termination could be brought under § 1981.

For the same reasons outlined in our discussion of the Act's retroactivity with respect to plaintiff's failure to promote claim, this court finds that the 1991 Act should not be given retroactive force. Mr. White's termination claim, therefore, cannot be brought under § 1981. Summary judgment for defendant will be granted with respect to this claim.

■ Finally, Union Pacific moved to dismiss the state claims of wrongful discharge and breach of contract for lack of supplemental jurisdiction in the event that the federal claims are dismissed. 28 U.S.C. § 1367(c)(3) states that the "district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction, ..." Pendent jurisdiction's justification lies in the considerations of judicial economy and convenience to litigants. If these are not found, a federal court should "hesitate to exercise jurisdiction over state claims." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

Thus, "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. at 1139. If substantial time and energy have been expended prior to the disposition of the federal claims, however, the federal court may justifiably retain jurisdiction over the state claims. *Jones v. Intermountain Power Project,* 794 F.2d 546, 550 (10th Cir.1986).

■ In the case before this court, neither Mr. White's breach of contract action nor his wrongful discharge claim presents a federal question independent of the Title VII and § 1981 claims. However, given that the Title VII claim is still viable, these pendent claims will not be dismissed. Defendant's motion with respect to these claims is therefore denied.

IT IS ACCORDINGLY ORDERED this 15 day of September, 1992, that the defendant's motion for summary judgment (Dkt. No. 15) with respect to plaintiff's § 1981 claims is hereby granted. Defendant's summary judgment motion concerning plaintiff's Title VII and pendent claims is hereby denied. This court has appointed attorney Jim Lawing to represent the plaintiff. A status conference by conference call is scheduled on October 16, 1992, at 1:30 p.m.