Rickey L. **HUDGENS**, Plaintiff,

v.

**HARPER–GRACE HOSPITALS**, Brian Say, Al Jarvis, Nancy Ripari, Frank Jarvis Associates, Inc., Defendants.

No. 88–CV–73471–DT.

United States District Court,
E.D. Michigan, S.D.

Jan. 16, 1990.

Strauss & Longo, P.C. by Joseph T. Longo, Detroit, Mich., for plaintiff.

Dykema Gossett by Martin Jay Galvin, Nancy L. Niemela, Detroit, Mich., for defendants.

## OPINION

GILMORE, District Judge.

In this action, Plaintiff alleges that Harper–Grace Hospitals and several of its named employees have twice denied him promotions based on race. He brings his action under 42 U.S.C. §§ 1981, 1982 and 1988, and also brings several pendent state claims.

It is obvious that 42 U.S.C. § 1988, which deals with attorney fees, offers no basis for recovery. In addition, no facts are pleaded in support of a cause of action under 42 U.S.C. § 1982. Plaintiff's only federal cause of action, if he has one, is under 42 U.S.C. § 1981. Therefore, this opinion will consider only claims under 42 U.S.C. § 1981. In addition, the Court will not consider pendent state claims.

This matter is before the Court on Defendant Harper–Grace Hospital's Motion for Summary Judgment, in which Defendant claims that the facts do not support a finding that Plaintiff's civil rights have been violated or that Defendant has breached its employment contract with Plaintiff.

I

Plaintiff claims Defendants violated 42 U.S.C. § 1981 by failing to promote him on two different occasions. The first occurred in 1986. At that time, Plaintiff was employed by Harper–Grace Hospitals as a Supervisor of Computer Operations, and he bid, pursuant to hospital policy, on the position of Telecommunications Analyst. Though the job for which Plaintiff bid was in the same department as that in which he was currently working, the new job in-

volved a significant change of duties, a change in employment grade, and an increase in salary. Plaintiff's bid for the position was successful, and his supervisor made an unofficial announcement of the promotion. However, before Plaintiff assumed his new duties, and before Harper–Grace made an official announcement about Plaintiff's promotion, Harper–Grace withdrew the position from bidding, stating that there was not enough work to justify the position.

The second incident occurred in 1987. Plaintiff was retained through a period of layoffs and cutbacks, and was working for Harper–Grace as a Network Hardware Coordinator. In September 1987, he bid unsuccessfully for the position of Manager of Computer Services. This job involved supervisory responsibility, policy development, and implementation of computer systems. Plaintiff's bid was unsuccessful, and the position was awarded to a white woman.

With these facts before it, the issue before the Court is whether Plaintiff's failure-to-promote claim brought under 42 U.S.C. § 1981 is viable in light of the recent United States Supreme Court case of *Patterson v. McLean,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). That case substantially restricts the range of employment discrimination actions that can be brought under 42 U.S.C. § 1981.

## II

■ The initial question before the Court is whether *Patterson* should be retroactively applied. Patterson was decided on June 15, 1989; this action was filed on August 22, 1988, making retroactivity a necessary consideration.

The basic test of when a decision should be retroactively applied is found in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct.

349, 30 L.Ed.2d 296 (1971), where the Court stated:

> In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Id.* at 106, 92 S.Ct. at 355. (citations omitted).

The first factor to be considered then is whether the case establishes a new principle of law. According to the Supreme Court, a case can do this either by overruling past precedent or by deciding an issue of first impression. Certainly, the issue before this Court is not one of first impression. Furthermore, the Supreme Court explicitly refused to overrule prior precedent on the scope of contract actions under 42 U.S.C. § 1981. A prior significant case was *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). In *Runyon,* the Court determined that private schools could not refuse to admit qualified children solely on the basis of race, thus extending the reach of 42 U.S.C. § 1981 to private contracts. The *Patterson* Court suggested that some members of the Court had considered overruling *Runyon,*[1] but

---

1. The Court stated:

   The arguments about whether *Runyon* was decided correctly in light of the language and history of the statute were examined and discussed with great care in our decision. It was recognized at the time that a strong case could be made for the view that the statute does not

   reach private conduct, *see* 427 U.S., at 186, 49 L.Ed.2d 415, 96 S.Ct. 2586 [at 2602] (Powell, J. concurring,); *id.* at 192, 49 L.Ed.2d 415, 96 S.Ct. 2586 [at 2605] (White, J., dissenting), but that view did not prevail. Some Members of this Court believe that *Runyon* was decided incorrectly, and others consider it correct on

held: "We conclude, upon direct consideration of the issue, that no special justification has been shown for overruling *Runyon.*" *Patterson*, —— U.S. at ——, 109 S.Ct. at 2370, 105 L.Ed.2d at 148.

Nevertheless, the Court strictly limited the application of § 1981 in contract actions. It refused to extend § 1981 to racially-based harassment on the job, and stated that § 1981, by its terms, covers " 'the mak[ing] and enforce[ment]' of contracts alone." *Patterson*, —— U.S. at ——, 109 S.Ct. at 2372, 105 L.Ed.2d at 150. Although the Court did not overrule *Runyon*, it significantly limited the broad jurisdictional fiat of *Runyon*. However, this Court does not consider the limitation an overruling of prior precedent such that *Runyon* should not be retroactively applied.

The second factor to consider is whether retroactive application will retard or further the application of the rule in question. The statute in question is 42 U.S.C. § 1981, which provides as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

To a significant extent, our analysis of this factor has been accomplished by the decision of the Supreme Court to limit the scope of § 1981. That Court determined that limiting the scope of § 1981 was in accord with the purposes of the Civil Rights Act, and obviously this Court is bound by the Supreme Court's decision.

The final factor to consider in determining retroactivity is whether the retroactive effect of *Patterson* will result in inequity. To satisfy this prong, the party opposing retroactivity must show "substantial inequitable results." *Chevron Oil*, 404 U.S. at 106, 92 S.Ct. at 355.

Plaintiff's counsel assumes in argument that retroactive application of *Patterson* will result in the dismissal of his case, and strongly argues against retroactivity on the grounds that dismissal would be substantially inequitable to his client. However, this Court's analysis concludes that retroactivity will not result in dismissal of the case, and, if it does not, there is no basis to Plaintiff's claim of substantial prejudice as required by Chevron.

Moreover, even if the retroactive application of *Patterson* would result in dismissal of the § 1981 claim, Plaintiff would still have time to refile his pendent claims in state court. Plaintiff brought both discrimination and breach of contract claims. The earliest incident of alleged breach of contract this Court can identify occurred in March 1985. Michigan law provides for a six year statute of limitations for breach of the employment contract.[2]

Therefore, the state breach of contract claims would not be barred by the Statute of Limitations. Furthermore, the Statute of Limitations would be tolled as to all pendent claims while they were pending in federal court.

Based upon the preceding analysis of the factors set out in *Chevron Oil*, this court finds that Patterson should be retroactively applied to Plaintiff's cause of action.[3]

---

its own footing, but the question before us is whether it ought now to be overturned. We conclude after reargument that *Runyon* should not be overruled, and we now reaffirm that § 1981 prohibits racial discrimination in the making and enforcement of private contracts.
*Patterson*, —— U.S. at ——, 109 S.Ct. at 2370, 105 L.Ed.2d at 147.

**2.** M.C.L.A. 600.5807(8) provides: "The period of limitations is 6 years for all other actions to recover damages or sums due for breach of contract."

**3.** The decision to apply *Patterson* retroactively accords with the position of the majority of courts that have addressed the issue. *Williams v. National Railroad Passenger Corp.,* 716 F.Supp. 49 (D.D.C.1989); *Hall v. County of Cook, State of Illinois,* 719 F.Supp. 721 (N.D.Ill.1989); *Prather v. Dayton Power & Light Co.,* No. C–3–85–491, 1989 WL 103740 (S.D. Ohio, Sept. 7, 1989); *Morgan v. Kansas City Area Transporta-*

### III

■ *Patterson* clearly refused to extend the scope of § 1981 to postformation contract disputes. It stated:

> But the right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions. Such postformation conduct does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment, matters more naturally governed by state contract law and Title VII.

*Patterson,* —— U.S. at ——, 109 S.Ct. at 2373, 105 L.Ed.2d at 150–51.

As to the enforcement of contracts, the Court determined that that right "embraces protection of a legal process, and of a right of access to legal process." *Id.* —— U.S. at ——, 109 S.Ct. at 2373, 105 L.Ed.2d at 151. Based on these limitations, the Court found Plaintiff's claim of racial harassment on the job was not within the scope of 42 U.S.C. § 1981.

However, the Court left open the possibility that failure to promote claims were within the purview of § 1981. In *Patterson,* Plaintiff also alleged discriminatory failure to promote, and the Court addressed the issue separately. It reasoned:

> [T]he question whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer. If so, then the employer's refusal to enter the new contract is actionable under § 1981.... Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the

employer is such a claim actionable under § 1981.

*Id.* —— U.S. ——, 109 S.Ct. at 2377, 105 L.Ed.2d at 156.

Because the Respondent failed to argue that the promotion claim was "not cognizable under § 1981," *id.,* the Court did not decide the issue. The Court did, however, cite *Hishon v. King & Spaulding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) as an example of when a promotion rises to the level of an "opportunity for a new and distinct relation between the employee and the employer." *Id.* In *Hishon,* a law firm refused to advance an attorney from the position of associate to partner. The Court's citation to this case indicates that advancement from associate to partner is sufficient to work a new relationship between the parties. There are potentially many changes involved in advancement from associate to partner that are relevant in analyzing what kind of promotion works a changed relation between the parties. These changes include: increased administrative and supervisory responsibility, increased salary and potential for profit-sharing, increased liability, and potential changes in pension or other benefits.

In *Sofferin v. American Airlines, Inc.,* 717 F.Supp. 597 (N.D.Ill.1989), the court characterized the change in *Hishon* as one from "employee to employer." In *Sofferin,* the court refused to find that an employee who was denied advancement from probationary to tenured status could have experienced an equivalent change, and refused to find that Plaintiff's failure-to-promote claim stated a cause of action under § 1981. It found persuasive the fact that, had Plaintiff received the advancement, "he would have continued performing the very same functions he performed as a co-pilot while on probation. Effectively, there would have been no 'change' in Sofferin's position." *Id.* at 599. The court thus

---

*tion Authority,* 720 F.Supp. 758 (W.D.Mo.1989). In *Thomas v. Beech Aircraft Corp.,* 58 USLW 2218, 1989 WL 110848 (D.Kan.1989), after careful consideration of the retroactivity of *Patterson,* the court found *Patterson* not retroactive. It based its reasoning on the fact that *Patterson* significantly changed the law in the Seventh

Circuit and on the fact that retroactive application would result in dismissal of a § 1981 action that had been a live controversy for 11 years. In contrast, the case now before the Court involves no such prejudice, and the Court will follow the majority holding.

identified changed duties or functions as another relevant factor in determining whether there was a changed relation between the parties.

Other courts have also considered whether a failure-to-promote claim falls within the scope of § 1981, as limited by *Patterson.* Several courts have found that the promotion before them was not sufficient to work a new relation between the parties. In *Williams v. National Railroad Passenger Corp.,* 716 F.Supp. 49 (D.D.C.1989), the court determined that a promotion resulting in no changes except a pay raise was insufficient to support a new and distinct relation between employer and employee. Similarly, in *Greggs v. Hillman Distributing Co.,* 719 F.Supp. 552 (S.D.Tex.1989), the court refused to find that a promotion from sales supervisor to area supervisor, standing alone, satisfied *Patterson.* It is thus clear that a pay raise or a promotion from one supervisorial position to another does not alone give rise to a new and distinct relationship between an employer and employee. In *Dicker v. Allstate Life Insurance Co.,* No. 89–C–4982, 1989 WL 134317 (N.D.Ill., Oct. 23, 1989), the court determined that denial of promotions within a line of progression of non-exempt positions that might ultimately result in an exempt managerial position did not work a changed relation.

Other district courts considering the issue have found facts sufficient to support a new and distinct relationship. In *Mallory v. Booth Refrigeration & Supply Co., Inc.,* 882 F.2d 908 (4th Cir.1989), the court determined that the combination of "[p]romotion from clerk to supervisor with a consequent increase in responsibility and pay" satisfied the requirements of *Patterson.* Similarly, in *Luna v. City and County of Denver,* 718 F.Supp. 854 (D.Colo.1989), the court determined that promotion from Project Inspector I to Engineer III stated a cause of action under § 1981. The court noted substantial differences between the two positions as to supervisory responsibility, duties performed, and required qualifications. Those differences were demonstrated by the fact that the Plaintiff "is presently required to use the time clock and is entitled to overtime pay as opposed to the position of Engineer III, which is exempt from these requirements." In *Green v. Kinney Shoe Corp.,* 728 F.Supp. 768, 776–777 (D.D.C.1989), the court found that a promotion from shoe salesman/manager-in-waiting to manager of the shoe store qualified as a new and distinct relationship. In *Miller v. Shawmut Bank of Boston,* 726 F.Supp. 337 (D.Mass.1989), the court determined that a promotion to personal banker from customer services representative was sufficient to save a § 1981 claim from summary judgment, particularly when internal company memos showed that the jobs were considerably different. *See, Malhotra v. Cotter Co.,* 885 F.2d 1305 (7th Cir.1989) (court suggested in *dicta* that "routine advancement" which only existing employees could apply for did not give rise to a new and distinct relation, but advancement to a position for which outsiders could apply did).

These cases indicated that trial courts analyze failure-to-promote claims under *Patterson* by carefully examining what changes, if any, will result from the promotion and determining if the combined changes are significant enough to give rise to a new and distinct relationship. Their inquiry is clearly fact specific. The developing body of case law has identified several significant changes: changes in pay, in duties and responsibilities, in status from hourly to salaried employee, in required qualifications, in responsibility level, in daily duties, in potential liability, and in pension and other benefits. There are potentially many factors that could arise to influence the determination, for example, change in location, in grade, in department or office, and in use of equipment.

The cases that have addressed the issue instruct that the trial court must consider evidence of all change, those identified above and others, which a promotion will work. It must then exercise reasoned judgment as to whether that change will work a new and distinct relation between the parties. This judgment must consider not only the number of resulting changes,

**1326**

but the magnitude of individual changes, and of the changes as a whole. A significant single change, such as the change from hourly to salaried employee, would be enough to satisfy *Patterson*. In instances of smaller changes, such as changes in equipment use or employment grade without accompanying increases in responsibility, a combination of two or more changes would be necessary to work a new relation between the parties.

In the instant case, Plaintiff alleges civil rights violations for his employer's failure to promote him from Supervisor of Computer Operations to Telecommunications Analyst and from Network Hardware Coordinator to Manager of Computer Services. Both promotions involved significant changes. Under both, Plaintiff would have received grade increases and pay raises. The first promotion would have involved a move from a supervisory position to a technical position, and the second would have involved a move from a technical position to a management position. The second promotion, at least, required several qualifications distinct from those required for the job in which Plaintiff was working, including knowledge of computer language, ability to establish policy and ability to implement computer systems. The changes involved in both promotions are significant enough to give rise to a new and distinct relation between Plaintiff and Defendant. Consequently, this promotion satisfies the standard of *Patterson v. McLean*. This Court has subject-matter jurisdiction over the § 1981 claim, and pendent jurisdiction over the related state claims.

With reference to the remaining arguments in support of summary judgment on the related state claims, the Court has yet to rule on them and must do so. It therefore sets those motions for argument on Thursday, January 18, 1990, at 2:00 p.m. An order in accordance with this opinion may be entered.