Dirrie CONERLY, a/k/a Darrell Conerly, Plaintiff,

v.

CVN COMPANIES, INC. and CVN TV Company, doing business as Cable Value Network, Defendants.

Civ. No. 4–89–214.

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 21, 1992.

Connie Lynn Howard, Garber & Metcalf, Greg M. Corwin, Corwin Law Office, St. Louis Park, Minn., for plaintiff.

Gregory James Stenmoe, Eric L. Leonard, Susan B. Thomas, Briggs & Morgan, Minneapolis, Minn., for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court defendants' motion for summary judgment. Based on a review of the file, record and proceedings herein, the court grants defendants' motion for summary judgment.

## BACKGROUND

Defendant CVN TV Company is a wholly owned subsidiary of defendant CVN Companies, Inc. Defendants own and operate a home telemarketing service known as Cable Value Network ("CVN"). Plaintiff Darrell Conerly ("Conerly"), a black male, was employed by CVN as a telemarketing sales representative from December 14, 1986 until he was fired on May 22, 1987.

Conerly claims that while he was a sales representative, he applied for the following

positions at CVN: broadcast operator, broadcast technician, lead employee in the Telemarketing Department, administrative assistant and statistician I insider. Conerly alleges that he was qualified for those positions but was not promoted because of his race, in violation of 42 U.S.C. § 1981. Conerly further alleges that his promotion to any of those positions would have created a new and distinct relationship with defendants.

Conerly filed suit on March 13, 1989. In addition to his promotion claim, he asserted a racial harassment claim under § 1981 based on his allegations that his supervisor subjected him to excessive and unwarranted review and criticism, that his supervisor disciplined him for actions for which white coworkers were not disciplined, that he was disciplined for misconduct that he did not commit and that defendants failed to inform other employees of the falsity of theft accusations made against him and that defendants failed to remove documents concerning the theft accusations from his personnel file. Conerly also alleged that defendants' improperly terminated him because of his race and that their actions during and after his termination constituted defamation.

While Conerly's claims were pending, the United States Supreme Court decided *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). The Court narrowly defined the scope of the "make and enforce contracts" clause as it then existed in § 1981,[1] reasoning that:

By reading § 1981 not as a general proscription of racial discrimination in all aspects of contract relations, but as limited to the enumerated rights within its express protection, specifically the right to make and enforce contracts, we may preserve the integrity of Title VII's pro-

cedures without sacrificing any significant coverage of the civil rights laws. *Id.* at 181–82, 109 S.Ct. at 2375.

In an order date March 26, 1990, this court determined that *Patterson* retroactively applied to Conerly's claims. *Conerly v. CVN Cos.*, No. 4–89–214, slip op. at 7–8 (D.Minn. Mar. 26, 1990) (relying on the analysis set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971)); *accord, Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1519 (11th Cr.1991) (*Patterson* applies retroactively); *Gonzalez v. Home Ins. Co.*, 909 F.2d 716, 723 (2d Cir.1990) (same); *Courtney v. Canyon Television & Appliance Rental*, 899 F.2d 845, 849 (9th Cir. 1990). The court dismissed Conerly's racial harassment claim relying on the *Patterson* Court's determination that such claims fall outside the purview of § 1981 because they do not implicate a party's right to either make or enforce contracts. *Id.* at 6. The court also dismissed Conerly's discriminatory discharge claim. *E.g., Taggart v. Jefferson County Child Support Enforcement Unit*, 935 F.2d 947, 948 (8th Cir.1991) (en banc) (construing *Patterson* to bar such discharge claims under § 1981).

The court refused, however, to dismiss Conerly's promotion claim. In *Patterson*, the Supreme Court determined that such claims are actionable only in cases "where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer." *Patterson*, 491 U.S. at 185, 109 S.Ct. at 2377. Following *Patterson*, the court determined that Conerly's promotion claim might be actionable if he could prove that his promotion to one of the named positions would have created a new and distinct relationship with defendants.[2] *Conerly*, slip op. at 7. To facilitate resolution of that

---

1. In *Patterson*, the Supreme Court construed the following version of § 1981:

   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and

shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
491 U.S. at 176, 109 S.Ct. at 2372 (citing statute).

2. The court also deferred ruling on defendants' motion to dismiss Conerly's defamation claim until it determined whether he could maintain his promotion claim under § 1981.

claim, the court permitted Conerly to amend his complaint to conform with *Patterson*'s "new and distinct" language. *Id.* Conerly filed his amended complaint on November 15, 1991, more than one and a half after the court granted his motion to amend.

On November 21, 1991, the Civil Rights Act of 1991 ("1991 Act") was enacted. Section 1981 ("§ 1981") of the 1991 Act now provides that:

> (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.[3]
>
> (b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.
>
> (c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

Pub.L. No. 102–166, sec. 101, 105 Stat. 1071, 1071–72 (1991) (to be codified as amended at 42 U.S.C. § 1981).

Defendants move for summary judgment on Conerly's promotion claim, contending that the 1991 Act does not apply retroactively and that Conerly's claim fails under *Patterson*'s new and distinct relationship standard. Conerly, however, asks the court to analyze his claim using the new wording contained in § 1981(b) of the 1991 Act regarding the term "make and enforce contracts". He also urges the court to reinstate his termination and racial harassment claims based on that wording.

Defendants also move for summary judgment on Conerly's defamation claim, arguing that because his federal claims fail, the court lacks jurisdiction over his state law claim. Conerly, however, asks the court to exercise its supplemental jurisdiction over that claim.

## DISCUSSION

### I. *Application of the Civil Rights Act of 1991*

■ Conerly first argues that the new wording of § 1981 essentially overturns *Patterson, e.g., Great American Tool & Mfg. Co. v. Adolph Coors Co.,* 780 F.Supp. 1354, 1355 (D.Colo.1992), and that his § 1981 claims should be analyzed according to the terms of the 1991 Act. In *Bowen v. Georgetown University Hospital,* the Supreme Court noted that "[r]etroactivity is not favored in the law" and adopted a presumption of prospective application unless statutory "language requires" retroactivity. 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) (citations omitted) ("Georgetown Hospital"). The Eighth Circuit subsequently adopted the *Georgetown Hospital* presumption, reasoning that:

> We will not retroactively apply statutes or regulations without a clear indication that the legislature or administrative agency intends to diverge from the norm of acting prospectively.... [T]he presumption against retroactive application best preserves the distinction between courts and legislatures: the former usually act retrospectively, settling disputes between persons, the later usually act prospectively, setting the general rules for future conduct.

*Simmons v. Lockhart,* 931 F.2d 1226, 1230 (8th Cir.1991) (citations omitted).[4] Apply-

---

**3.** This section remains unchanged from the wording that was interpreted by the *Patterson* Court; however, the 1991 Act adds sections (b) and (c).

**4.** In *Simmons,* the Eighth Circuit discussed the conflict between the presumption of prospectivi-

ty announced by the Supreme Court in *Georgetown Hospital* and the presumption of retroactivity previously announced in *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) (holding "that a court is to apply the law in effect at the time it renders its decision, unless doing so would re-

ing the *Georgetown Hospital* analysis to the 1991 Act, the court determines that § 1981 should not be retroactively applied unless the Act's wording or legislative history clearly manifests such application.

### A. Statutory Language

Following *Georgetown Hospital,* the court first examined the language of the Act. *National Wildlife Fed'n v. Agricultural Stabilization & Conservation Serv.,* 955 F.2d 1199, 1204 (8th Cir.1992) (retroactivity analysis begins with statutory wording). Five provisions of the Act directly address the timing of its application. Section 402(a), which concerns the general effectiveness of the Act, states that:

> In General.—Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment.

Pub.L. No. 102–166, sec. 402(a), 105 Stat. 1071, 1099 (1991) (to be codified as a note to § 1981). Section 116 further provides that:

> Nothing in the amendments made by this title shall be construed to affect court-ordered remedies, affirmative action, or conciliation agreements, that are in accordance with the law.

*Id.* Sec. 116, 105 Stat. at 1079 (to be codified as a note to § 1981). Those sections, however, do not address the issue of whether § 1981 of the 1991 Act applies to cases pending at the time of its enactment, and thus the court determines that their

wording neither supports nor precludes retroactivity. *E.g., Khandelwal v. Compuadd Corp.,* 780 F.Supp. 1077, 1078 (E.D.Va.1992) ("[i]t is obvious that no provision of the new Act conveys a clear indication that congress intended the Act to apply retroactively"); *Burchfield v. Derwinski,* 782 F.Supp. 532, 535 (D.Colo.1992) ("on its face, the language of section 402 fails to express a clear congressional intent regarding the retroactive application of the Act").

Three other sections specifically preclude retroactive application. Section 402(b) provides that:

> Certain Disparate Impact Cases.—Notwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975 and for which an initial decision was rendered after October 30, 1983.[5]

Pub.L. No. 102–166, sec. 402(b), 105 Stat. 1071, 1099 (1991) (to be codified as a note to § 1981). Section 109, which extends Title VII protection to citizens of the United States employed in foreign countries,[6] further provides that:

> (c) Application of Amendments.—The amendments made by this section shall not apply with respect to conduct occurring before the date of the enactment of this Act.

*Id.* Sec. 109(c), 105 Stat. at 1078 (to be codified as a note to 42 U.S.C. § 2000e). Section 110, which authorizes the establish-

---

sult in manifest injustice or there is statutory direction or legislative history to the contrary"). The Eighth Circuit rejected *Bradley,* determining that "[t]he better rule is that of *Georgetown Hospital." Id.*

**5.** As one court noted, section 402(b):

> was inserted solely to insure that the Act would not be interpreted to allow further litigation in *Wards Cove Packing Co. v. Atonio,* the only case satisfying this section's prerequisites.

*Khandelwal,* 780 F.Supp. at 1079.

Section 105 of the 1991 Act legislatively overrules the Supreme Court's decision in *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). Senator Murkowski, the author of section 402(b), noted that the section was added to preclude retroac-

tive application of the Act to the *Wards Cove* litigation. 137 Cong.Rec. S15963 (daily ed. Nov. 5, 1991). Senator Dole further stated that: "At the request of the Senators from Alaska, § 22(b) [section 402(b)] specifically points out that nothing in the Act will apply retroactively to the Wards Cove Packing Company, an Alaska company that spent 24 years defending against a disparate impact challenge." 137 Cong.Rec. S15478 (daily ed. Oct. 30, 1991).

**6.** Section 109 legislatively overturns the Supreme Court's determination in *Equal Employment Opportunity Comm'n v. Arabian American Oil Co.* that Title VII does not apply "extraterritorially to regulate the employment practices of United States employers who employ United States citizens abroad." — U.S. ——, 111 S.Ct. 1227, 1229, 113 L.Ed.2d 274 (1991).

ment of a training institute, also includes the following provision:

> Effective Date.—The amendment made by this section shall take effect on the date of the enactment of this Act.

*Id.* Sec. 110(b), 105 Stat. at 1078 (to be codified as 42 U.S.C. § 2000e–4). Those three sections clearly address the date of the Act's effectiveness by prohibiting its retroactive application in narrow circumstances. The court finds no other provisions that concern the timing of the Act's application[7] and concludes, based on its examination of foregoing sections, that the statutory language alone is insufficient to overcome the presumption of prospective application.[8] *See Georgetown Hospital,* 488 U.S. at 208, 109 S.Ct. at 471; *Simmons,* 931 F.2d at 1230; *e.g., Tyree v. Riley,* 783 F.Supp. 877, 892 (D.N.J.1992) (following *Georgetown Hospital* and concluding that section 102 (to be codified as 42 U.S.C. § 1981a) should apply prospectively); *West v. Pelican Management Servs. Corp.,* 782 F.Supp. 1132, 1135 (M.D.La.1992) (relying *Georgetown Hospital* presumption and refusing to retroactively apply provisions of section 102 concerning compensatory and punitive damages and the right to a jury trial); *Burchfield,* 782 F.Supp. at 535 (act should be prospectively applied, following *Georgetown Hospital*); *Khandelwal,* 780 F.Supp. at 1081 (finding that Act applies prospectively relying on presumptions set forth in *Georgetown Hospital* and *Simmons*); *Van Meter,* 778 F.Supp. at 84–85 (applying presumption of prospectivity and refusing to retroactively apply section 102 provisions addressing punitive and compensato-

---

**7.** One court determined that the wording of section 102(d) suggests prospective application because it defines a "complaining party" for purposes of sections 102(a)(1) & (2) as "the Equal Employment Opportunity Commission, the Attorney General, or a person who *may* bring an action or proceeding." *Van Meter v. Barr,* 778 F.Supp. 83, 84 (D.D.C.1991) (quoting statute) (emphasis added). That section, however, does not specifically address the timing of the Act's effectiveness. The court also notes that its wording does not "require" retroactive application of either that section or the Act.

**8.** Some courts, however, rely on the language precluding retroactivity contained in sections 402(a) & (b) and 109 to find that the balance of 1991 Act "must apply" to cases pending at the time of its enactment. *See, e.g., Stender v. Lucky Stores,* 780 F.Supp. 1302, 1303–04 (N.D.Cal.1992). The *Stender* court reasoned that:

> the only interpretation of the Section 402 that does not make clause (b) meaningless is that the Act is applicable to cases which were pending at the time of its enactment, with the exception of *Wards Cove.*
> . . . .
> Like section 402(b), section 109(c) would be meaningless unless the Civil Rights Act applies to cases which were pending at the time of its enactment.

*Id.* at 1304. The court thus found that retroactivity of the remainder of the Act "is required . . . by necessary implication.'" *Id.* (citations omitted); *see also Graham v. Bodine Elec. Co.,* 782 F.Supp. 74, 76 (N.D.Ill.1992) ("If Congress intended the entire Act to apply only prospectively, it would not have needed to include . . . [sections 402(b) & 109(c) ]."

Other courts, however, reject that interpretation, noting that:

> The use of deduction in statutory construction cannot . . . be regarded as conclusive.
> . . . .
> [T]he presence of sections 402(b) and 109, demonstrates, at most, that where Congress wished to express any intent concerning the application of the Act, it took the initiative to state so specifically.

*Joyner v. Monier Roof Tile, Inc.,* 784 F.Supp. 872, 876 (S.D.Fla.1992) (rejecting *Stender*'s analysis but finding that the Act applies retroactively based on *Bradley*).

Examining section 402(b) in conjunction with section 402(a), the *Khandelwal* court noted that:

> Under a settled rule of statutory construction, it could be said that § 402(b) would be meaningless if § 402(a) is not construed as a general rule of retroactivity. However, such a reading is certainly not conclusive. . . .

780 F.Supp. at 1079.

Interpreting various other provisions, the *Khandelwal* court further concluded that:

> The argument that [sections 109, 110, and 116] would not have been included if Congress had intended the Act to apply only prospectively is one that cannot be readily inferred and invites the Court to speculate as to legislative intent. If Congress intended the remainder of the Act to apply retroactively, it would have stated so.

*Id.* at 1078.

The foregoing conflict affirms this court's conclusion that the wording of the statute is too ambiguous to overcome the presumption of prospectivity.

ry damages and the right to a jury trial); *contra Joyner*, 784 F.Supp. at 877–78 (relying on *Bradley* presumption of retroactivity and applying two sections of the Act to case pending at time of enactment: section 102, concerning compensatory and punitive damages, and section 107, addressing availability of attorneys' fees (to be codified as 42 U.S.C. § 2000e–5(g)(2)(B)).

B. Legislative History

The court must also examine the Act's legislative history to determine if it clearly mandates retroactive application of § 1981. Senator John C. Danforth, one of the sponsors of the bill,[9] relied on *Georgetown Hospital* to support his position that the Act should not be retroactively applied to cases pending at the time of enactment:

My review of Supreme Court case law supports my reading that in the absence of an explicit provision to the contrary, no new legislation is applied retroactively. Rather, new statutes are to be given prospective application only, unless Congress explicitly directs otherwise, which we have not done in this instance.

*Tyree*, 783 F.Supp. at 886 (citing 137 Cong. Rec. S15483 (daily ed. Oct. 30, 1991)).[10] Senator Edward Kennedy, another sponsor, cited *Bradley* when arguing that the 1991 Act should be retroactively applied to pending cases:

I would like to state ... my understanding with regard to the bill's effective date.... It will be up to the courts to determine the extent to which the bill will apply to cases and claims that are pending on the date of enactment. Ordi-

narily, courts in such cases apply newly enacted procedures and remedies to pending cases. That was the Supreme Court's holding in *Bradley v. Richmond School Bd.*, 416 U.S. 696 [94 S.Ct. 2006, 40 L.Ed.2d 476] (1974).

*Id.* at 886–87 (citing 137 Cong.Rec. S15485 (daily ed. Oct. 30, 1991)).

The legislative history from the United States House of Representatives is equally ambiguous.[11] Representative Henry Hyde stated that:

I want to point out section 402 of the [Act] specifies that the act and the amendments made by the act take effect on the date of enactment. They have no application to pending cases or to cases arising before the effective date of the act. The act is prospective.

137 Cong.Rec. H9505 (daily ed. Nov. 7, 1991) (1991 WL 229644). Representative Don Edwards, contended, however, that:

The bill [Section 402(b)] states that it takes effect on the date of enactment. The intent of the sponsors is that this language be given its normal effect, and that the provisions of the bill be applied to pending cases except where the bill expressly provides otherwise.

*Id.*

Examining the legislators' statements, the court determines the legislative history does not "require" retroactive application of § 1981 to cases pending at the time of its enactment, and thus it also fails to overcome the presumption of prospectivity.[12] *E.g., West*, 782 F.Supp. at 1133 (find-

---

**9.** As the Supreme Court observed, although statements of legislators during debates "may not be controlling", the statement of a sponsor, whose statutory language is ultimately enacted, is "an authoritative guide to the statute's construction." *North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 526–27, 102 S.Ct. 1912, 1920–21, 72 L.Ed.2d 299 (1982).

**10.** Senator Danforth's statement was also signed by Senators Cohen, Hatfield, Specter, Chafee, Durenburger and Jeffords. *Id.* (citing 137 Cong. Rec. S15485 (daily ed. Oct. 30, 1991)).

**11.** The court's review does indicates, however, that Congress was largely divided along partisan lines on the issue of retroactivity.

**12.** Focusing on another facet of legislative history, the three prior attempts to pass a civil rights

bill that specifically required retroactive application to pending cases, one court ruled that:

If there were not sufficient votes to enact a statute having provisions for retroactive effect, then the statute that was passed necessarily must be a statute of only prospective effect. Any other construction would lead to the statute having retroactive effect despite the fact that there were not sufficient votes available to push a statute having express retroactive effect through the various checks and balances [of] our legislative process. It is not the province of this Court to establish, by construction and interpretation, what could not be achieved through the normal political processes of constitutional lawmaking.

*West*, 782 F.Supp. at 1137.

ing no retroactivity but emphasizing that "[t]he task of resolving this retroactivity question is not at all made easier by the fact that the legislative history contains expressions on both sides of the issue."); *Van Meter*, 778 F.Supp. at 84 (rejecting retroactive application and observing that the legislative history "affirmatively leaves the issue [of retroactivity] in a total state of confusion"); *Hansel v. Public Serv. Co.*, 778 F.Supp. 1126, 1136 (D.Colo.1991) (determining that Act is not retroactive, relying on *Georgetown University*, after finding that "[a] review of the legislative history confirms that Congress was anything but clear on whether the Act would apply to pending cases."); *cf. Joyner*, 784 F.Supp. at 877–78 (applying act retroactively but noting the ambiguity of legislative history); *Doe v. Board of County Comm'rs*, 783 F.Supp. 1379, 1383 (S.D.Fla.1992) (stating that "the 1991 Act's legislative history contains contradictory statements from its sponsors", finding manifest injustice under *Bradley*, and thus refusing to retroactively apply § 1981); *Graham*, 782 F.Supp. at 76 (relying on the *Bradley* presumption to permit retroactivity but observing that "[a] close examination of the legislative history of the 1991 Act reveals that Congress did not agree on whether the 1991 Act would apply to pending cases"); *Mojica v. Gannett Co.*, 779 F.Supp. 94, 97 (N.D.Ill.1991) (applying act retroactively based on *Bradley* after determining that "the legislative debates are inconclusive regarding the retroactivity of the statute").

Based on the foregoing, the court concludes that § 1981 of the 1991 Act does not retroactively apply to Conerly's claims. Therefore, the court denies his motion to reinstate his termination and racial harassment claims under the new Act and will analyze defendants' motion for summary judgment on his promotion claim under the standard set forth in *Patterson*.

## II. *Motion for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which dictates that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552. With this standard at hand, the court will consider the defendants' motion for summary judgment.

### A. Conerly's Promotion Claim

Defendants move for summary judgment on Conerly's promotion claim, arguing that

it fails under the prior version of § 1981, as construed by *Patterson*.[13] In *Patterson*, the Supreme Court determined that:

> whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in the position was such that it involved the opportunity to enter into a new contract with the employer.... Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable....

*Patterson*, 491 U.S. at 185, 109 S.Ct. at 2377. Although *Patterson* did not define a standard to be used when making this determination, the Supreme Court cited a prior case, involving the promotion from associate to partner in a law firm, to illustrate the "new and distinct relation" test. *Id.* (citing *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). That example suggests that the Supreme Court intended to limit failure to promote claims under § 1981 to situations involving a fundamental and distinct change in the contractual relationship between the employer and employee. *See, e.g., Holt v. Michigan Dept. of Corrections*, 771 F.Supp. 201, 204 (W.D.Mich. 1991) (citing *Sofferin v. American Airlines, Inc.*, 717 F.Supp. 597, 599 (N.D.Ill. 1989)); *Guliford v. Beech Aircraft Corp.*, 768 F.Supp. 313, 319 (D.Kan.1991).

Conerly contends that a promotion from his position as a telemarketing sales representative to any of the five positions for which he applied would have created a new and distinct relationship with CVN because each of those positions entailed greater responsibility and increased pay. He cites *Hudgens v. Harper-Grace Hospitals*, 728 F.Supp. 1321 (E.D.Mich.1990), to support his contention. In *Hudgens*, the court listed various changes, including the manner and level of pay, qualifications, level of responsibilities, daily duties, level of liability and pension and other benefits, that other courts examined when making such a determination. *Id.* at 1325–26. The

*Hudgens* court determined that two promotions, involving grade increases, pay raises, and changes in position from supervisor to technician and technician to manager, were sufficient to satisfy *Patterson*. *Id.* at 1326. Relying on *Hudgens*, Conerly thus argues that a promotion involving an increase in pay and responsibilities is sufficient to present a viable § 1981 claim.

Other courts, however, have concluded that an increase in responsibility and pay, without more, is insufficient to satisfy *Patterson*. *See Holt*, 771 F.Supp. at 205 (failure to promote to a position with more responsibility and better pay and benefits was not actionable under *Patterson*'s interpretation of § 1981); *Guliford*, 768 F.Supp. at 320 (increase in salary and supervisory responsibilities found insufficient under *Patterson*). As one court observed:

> [v]irtually every [promotion] involves different duties and a different rate of pay; *Patterson* clearly did not intend every such claim to be actionable under § 1981.

*Bush v. Commonwealth Edison*, 732 F.Supp. 895, 898 (N.D.Ill.1990).

Adopting this analysis, the court determines that *Patterson* should not be construed so as to permit claims based on such "garden-variety" promotions because "the emasculation of Title VII that so concerned the *Patterson* Court would [thus] be accomplished." *Holt*, 771 F.Supp. at 204. Rather, the court concludes that *Patterson* requires a fundamental change in the employment relationship, such as a promotion from a nonsupervisory to a supervisory position, *e.g., Mallory v. Booth Refrigeration Supply Co.*, 882 F.2d 908, 910 (4th Cir.1989) (billing clerk to department supervisor); or a change from an employee to an officer of a bank, *e.g., Williams v. Chase Manhattan Bank, N.A.*, 728 F.Supp. 1004, 1009 (S.D.N.Y.1990); or from associate to partner, *e.g., Harrison v. Associates Corp.*, 917 F.2d 195, 198 (5th Cir.1990) (discussing *Hishon* and *Patterson* and noting that change to partner is significant because it

---

**13.** Defendants also argue that Conerly's claim fails under the 1991 Act. The court does not address this argument based on its conclusion that the amended version of § 1981 does not apply retroactively.

involves the assumption of supervisory responsibilities and personal liability and the acquisition of an ownership interest).

Conerly contends that his § 1981 claim is actionable because his promotion to any of the other positions would have involved an increase in his responsibilities and pay, thereby creating a new and distinct relationship. As the court previously determined, however, those changes, without more, are insufficient under *Patterson.* Comparing Conerly's telemarketing position with the five other positions for which he applied, the court determines that none of those promotions would represent a fundamental change in his employment relationship with CVN. Like his telemarketing position, all of the other jobs are entry-level or low-level, nonmanagement positions. If promoted, Conerly would not acquire supervisory or management responsibilities or the authority to make policy decisions at CVN. He would assume no personal liability for CVN's affairs and his status would remain that of an employee rather than an employer. His promotion would not change his fringe benefits or his at-will status and he would still be subject to the same human resources policy manual regarding his terms and conditions of employment. In the positions of lead employee in telemarketing, administrative assistant, broadcast operator or broadcast technician, Conerly would remain a non-exempt, hourly employee.[14] Based on the foregoing, the court concludes that Conerly's promotion claim does not satisfy the *Patterson* standard and grants defendants' motion for summary judgment on that claim.

### B. Conerly's Defamation Claim

■ Defendants also move for summary judgment on Conerly's defamation claim. They first argue that if their motion for summary judgment on Conerly's federal claim is granted, the court should refuse to exercise supplemental jurisdiction. Under Eighth Circuit law, the decision to dismiss such state law claims is discretionary. *E.g., Curtis v. Sears, Roebuck & Co.,* 754 F.2d 781, 785 (8th Cir.1985). The court notes that if it declines to exercise supplemental jurisdiction and Conerly is forced to bring his defamation claim in state court, the claim may be barred by the Minnesota statute of limitations. *See* Minn.Stat. § 541.07(1). Retaining supplemental jurisdiction also favors judicial economy because there has been a significant investment of judicial time and resources and the court is familiar with the complex fact issues involved. The court therefore determines to retain jurisdiction over the defamation claim.

Conerly alleges that defendants' employees made defamatory statements about him during and after his termination. It is undisputed that Conerly was fired because defendants believed that he tried to use a customer's credit card number to steal a video-cassette recorder. In May 1987, CVN's security system generated a report indicating that Conerly had entered an order with an address that matched the one on his employment application and that he had used a credit card number that belonged to a customer who had placed an order with him earlier that day.[15] The report triggered an investigation by George McKittrick, CVN's Director of Telemarketing. As part of the investigation, McKittrick met with Conerly and Conerly admitted that he had placed the order but claimed that he had done it during a training session using a credit card number given to him by a trainer. An internal clock in the computer system, which time stamps on all orders, indicated, however, that the order was placed while Conerly was supposed to be taking orders from customers.

---

14. The court notes that the position of statistician I insider is salaried. However, even with that additional change, the court finds that a promotion to that position would be insufficient to create a new and distinct relationship, for the reasons set forth in the opinion.

15. To minimize credit card fraud and employee theft, CVN has a security system to detect the unauthorized use of credit cards. If an order is entered into the computer with a delivery address that matches an address of a telemarketing sales representative, the computer system generates a report on that entry.

After his investigation, McKittrick concluded that Conerly had attempted to obtain CVN merchandise by entering fraudulent information into the computer system. CVN policy permits the immediate termination of an employee committing that type of offense. McKittrick presented the results of his investigation to Fred Wessman, CVN's Director of Human Resources, and Wessman approved Conerly's termination. McKittrick asked Thomas Marlett, a telemarketing supervisor, to inform Conerly of his termination. On May 22, 1987, Conerly met with Marlett behind closed doors in a conference room with no windows. Gunnar Johnson, a telemarketing lead employee, also attended the meeting as a witness. Marlett told Conerly that he was being terminated and requested and received his employee badge. Marlett allowed Conerly to return to his desk in the telemarketing room to get his personal items and then escorted him out of the building. While he was collecting his personal items, Conerly stated in a loud voice that he was being fired because he was accused of theft and claimed that he was going to hire a lawyer.

Jeff Lewis, CVN's Telemarketing Group Manager, was out of town when Conerly was fired. When he returned, Lewis decided that he could not conclusively determine whether Conerly had actually entered the credit card number in question. Despite McKittrick's belief that Conerly had committed the offense, Lewis offered to reinstate Conerly. Conerly, however, declined the job offer.

Conerly contends that he has been defamed because defendants told other CVN employees that he was terminated because he had been accused of stealing, that those statements were false, as evidenced by Jeff Lewis's findings, and that the statements lowered his reputation in the community and were not qualifiedly privileged.[16]

Under Minnesota law, an oral or written statement is defamatory if it: (1) is communicated to someone other than the plaintiff;

(2) is false; and (3) tends to harm the plaintiff's reputation and to lower him in the estimation of the community. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn.1980).

Minnesota also recognizes a qualified privilege for allegedly defamatory statements "made upon a proper occasion, from a proper motive and ... based upon reasonable or probable cause." *Id.* at 256–57 (quoting *Hebner v. Great N. Ry.*, 78 Minn. 289, 80 N.W. 1128, 1129 (1899)). Whether a qualified privilege exists is a question of law. *Lewis v. Equitable Life Assurance Soc'y*, 389 N.W.2d 876, 889 (Minn.1986).

Minnesota courts have found that communications between an employer's agents made in the course of investigating or punishing an employee for misconduct are qualifiedly privileged. *See, e.g., McBride v. Sears, Roebuck & Co.*, 306 Minn. 93, 235 N.W.2d 371, 374 (1975) (privilege applies because an "employer has an important interest in protecting itself and the public against dishonest or otherwise harmful employees"); *Lee v. Metropolitan Airport Comm'n*, 428 N.W.2d 815, 820 (Minn.Ct.App.1988) (statements by fellow employees to supervisor about employee's harassing phone calls were qualifiedly privileged). Communications made to an employee concerning the reasons for his discharge are qualifiedly privileged. *Lewis*, 389 N.W.2d at 890; *Harvet v. Unity Medical Ctr.*, 428 N.W.2d 574, 579 (Minn.Ct. App.1988). Statements made to employees concerning the reasons for another employee's discharge are also qualifiedly privileged. *Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 379–80 (Minn.1990).

If the privilege applies, a plaintiff must prove that the allegedly defamatory statements were made with actual malice, defined as "actual ill will, or a design causelessly and wantonly to injure

---

**16.** Conerly also alleges that he was compelled to tell a future employer that he had been fired as a result of the theft accusations. His deposition testimony indicates, however, that he voluntarily disclosed that he had been fired after he was actually hired by his new employer. Conerly Dep. at 70–75. The court thus concludes that his defamation claim concerning self-publication fails.

plaintiff." *Lee,* 428 N.W.2d at 820 (quotations omitted); *see also Frankson v. Design Space Int'l,* 394 N.W.2d 140, 144 (Minn.1986) (citing *Stuempges,* 297 N.W.2d at 257); *Lewis,* 389 N.W.2d at 890. The existence of malice is generally a jury question, *id.,* although the court does not have to submit the matter to a jury in situations where the totality of the evidence does not support a finding of malice. *Frankson,* 394 N.W.2d at 145; *Harvet,* 428 N.W.2d at 579.

■ In the present case, the evidence indicates that all of defendants' allegedly defamatory statements were based on probable cause and were made during either the investigation or punishment of Conerly's alleged theft. The statements were either communicated directly to Conerly when CVN management informed him of the reasons for his termination or were made to CVN employees when CVN officials explained why plaintiff was discharged. The court thus determines that defendants' statements were qualifiedly privileged. *McBride,* 235 N.W.2d at 374 (qualified privilege for statements made during investigation and punishment of employee misconduct); *Lewis,* 389 N.W.2d at 890 (communications made to employee regarding the reasons for his discharge were qualifiedly privileged); *Wirig,* 461 N.W.2d at 379–80 (privilege protects employer that publishes theft allegations about employee at a meeting of all other employees because all employees have an interest in profitable business operations and employer has an interest in punishing thefts and preventing future thefts).

■ Because the court concludes that defendants' statements are qualifiedly privileged, Conerly must demonstrate that those statements were made with actual malice. Conerly, however, presents no evidence that defendants acted with actual malice. Rather, the evidence before the court indicates that defendants' employees acted on a reasonable belief that Conerly attempted to steal defendants' merchandise and that their statements were based on that belief. Therefore, the court concludes that defendants' motion for summary judg-

ment on Conerly's defamation claim fails should be granted.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment is granted and Conerly's promotion and defamation claims are dismissed with prejudice; and

2. Conerly's motion to reinstate his termination and racial harassment claims under the new Act is denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.